UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CHRISTOPHER J. EDWARDS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:16-cv-01241-TWP-DML |
| ) | |
| BRADLEY SWAIN, ) | |
| ) | |
| Defendant. ) | |

**ENTRY ON MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on Defendant Bradley Swain's ("Swain") Motion for Summary Judgment. (Filing No. 24.) This case arises from the unusual circumstance in which a state court conducted a "re-do" of a probable cause hearing after its equipment failed to record. At the second hearing (to determine probable cause for arrest and a search warrant) Swain largely repeated his testimony from the first hearing. He did not, however, provide the judge with information he obtained through investigation in the several hours between the first and second hearings. Plaintiff Christopher Edwards ("Edwards") filed suit in this Court, alleging that Swain violated his Fourth Amendment rights by failing to present that new information at the second hearing. For the reasons described below, the Court grants Swain's Motion.

**I. LEGAL STANDARD**

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the court reviews the record in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *Zerante,* 555 F.3d at 584; *Anderson,* 477 U.S. at 255.

The party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion, and identifying "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (noting that when the non-movant has the burden of proof on a substantive issue, specific forms of evidence are not required to negate a non-movant's claims in the movant's summary judgment motion, and that a court may grant such a motion, "so long as whatever is before the district court demonstrates that the standard...is satisfied"); *see also* Fed. R. Civ. P. 56(c)(1)(A) (noting additional forms of evidence used in support or defense of a summary judgment motion, including "depositions, documents electronically stored information, affidavits or declarations, stipulations ..., admissions, interrogatory answers, or other materials").

Thereafter, a nonmoving party who bears the burden of proof on a substantive issue may not rest on its pleadings, but must affirmatively demonstrate by specific factual allegations that there is a genuine issue of material fact that requires trial. *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007); *Celotex Corp.*, 477 U.S. at 323-24; Fed. R. Civ. P. 56(c)(1). Neither the mere existence of some alleged factual dispute between the parties nor the existence of some "metaphysical doubt" as to the material facts is sufficient to defeat a motion for summary judgment. *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997); *Anderson*, 477 U.S. at 247-48; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "It is not the duty of the court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying the evidence upon which [it] relies." *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008).

Similarly, a court is not permitted to conduct a paper trial on the merits of a claim and may not use summary judgment as a vehicle for resolving factual disputes. *Ritchie v. Glidden Co., ICI Paints World-Grp.*, 242 F.3d 713, 723 (7th Cir. 2001); *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Indeed, a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (highlighting that "these are jobs for a factfinder"); *Hemsworth*, 476 F.3d at 490. When ruling on a summary judgment motion, a court's responsibility is to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial. *Id.*

## II. BACKGROUND

The following facts are not necessarily objectively true, but as required by Federal Rule of Civil Procedure 56, the facts are presented in the light most favorable to Edwards as the non-moving party. *See Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

On May 22, 2014, Edwards was 18 years old, working part-time in a daycare center operated by his mother. (Filing No. 34-1 at 3.) The children in the daycare ranged from infants to school age and included several children with special needs. One of the children who attended the daycare was a four-year-old girl ("M.N.") who was autistic and nonverbal. (Filing No. 34-1 at 5.) Edwards was working at the daycare center after 5:30 p.m., waiting on late parents to pick up three children still remaining at the center. (Filing No. 34-1 at 5.) The other daycare employees—Edwards' mother, aunt, and grandmother—had already left for the evening to attend a dance recital in which several of the children from the daycare center were performing. (Filing No. 34-1 at 5.) As he waited for the tardy parents, one of the children reported to him that M.N. had taken off her clothes and was running around naked. M.N had removed her clothes in school on prior occasions. (Filing No. 34-1 at 6.) Edwards picked up the child's clothing from the floor and got a popsicle in

an effort to coax M.N to put her clothes back on. *Id.* At that moment, M.N.'s mother, Leslie New ("New") walked into the room and asked Edwards if he was molesting her daughter. (Filing No. 1 at 3.) Edwards told New that M.N. had removed her own clothing and he was attempting to persuade her to dress herself. New left the room with M.N and on her way out asked another mother in the building to call 911. *Id.*

That evening, Monroe County Sheriff's Department Sergeant Ryan Davis ("Sergeant Davis") and Deputy Nathan Williamson responded to a 911 call made by Melanie Rubeck ("Rubeck"), a woman whose son attended the daycare center. (Filing No. 24-1 at 1.) Rubeck reported to Sergeant Davis that while she was at the daycare, another mother—Leslie New—told Rubeck that she found her daughter, M.N., in the daycare with no clothes on the lower half of her body, and Edwards with no clothes on the lower half of his body. (Filing No. 24-1 at 1.) Rubeck called 911 to report that a possible sexual assault had occurred. (Filing No. 24-1 at 1.)

Sergeant Davis then spoke to New, and documented his account of their conversation in his police report. (Filing No. 34-2 at 1.) According to that report, New stated when she came to pick up her daughter, she could not find her in the main rooms of the facility. (Filing No. 34-2 at 2.) She reported that she heard her daughter crying, and ultimately found her in "a small room off the second great room." (Filing No. 34-2 at 2.) She observed M.N. standing with no pants or panties on, and observed Edwards standing behind M.N. with no pants or underwear on. (Filing No. 34-2 at 2.) New stated that Edwards had a fully erect penis that appeared to have semen dripping from it. (Filing No. 34-2 at 2.) She stated that she yelled several times "what is going on," while Edwards attempted to cover his erect penis. (Filing No. 34-2 at 2.) She stated that Edwards followed her out of the building, and she asked him whether he had touched M.N. (Filing No. 34-2 at 2.) Edwards responded only by saying "uh" and repeatedly apologized. (Filing No.

4

34-2 at 2.) Sergeant Davis noted at both the beginning and end of his report that New's emotional state was very distraught and she was having difficulty staying on track during his interview.

Sergeant Davis contacted the Monroe County Central Dispatch, who advised that Brad Swain was the detective on call. (Filing No. 34-2 at 3.) Sergeant Davis was informed that Swain would soon be in contact. (Filing No. 34-2 at 3.) Edwards was handcuffed, placed in the backseat of Deputy Williamson's patrol car, read his *Miranda* rights, and transported to the Monroe County Sheriff's office. (Filing No. 24-3 at 1.) Edwards invoked his right to remain silent and did not provide a statement. (Filing No. 24-4 at 2.)

No further statements were taken from New that evening. (Filing No. 24-4 at 2.) At approximately 9:30 p.m., a probable cause hearing was held via telephone with Honorable Teresa D. Harper ("Judge Harper") of the Monroe County Circuit Court presiding. (Filing No. 34-2 at 4.) Judge Harper found probable cause existed to arrest Edwards, and she granted a search warrant to obtain Edwards' underwear and several bodily substances. (Filing No. 24-4 at 2.)

The next day, on May 23, 2014, Swain conducted a recorded interview with New. (Filing No. 24-4 at 2.) New stated that when she entered the daycare to pick up her daughter, she heard the sound of M.N.'s cry. (Filing No. 24-5 at 2-3.) She followed the sound until she found M.N. in a room adjoining one of the great rooms. (Filing No. 24-5 at 3.) She saw M.N. standing in front of a chair with no skirt or panties on. (Filing No. 24-5 at 3.) Edwards appeared to be either getting up or getting ready to sit down, and his back was to New. (Filing No. 24-5 at 3.) Edwards reached for a popsicle, and New saw that Edwards' pants were up around his waist but undone. (Filing No. 24-5 at 3.) New could "see an erection on the side," and she saw several wet spots that she thought could be pre-ejaculate or drips from the popsicle. (Filing No. 24-5 at 3.) She asked Edwards "what's going on here," and he responded that "[he] was trying to get her clothes on her."

(Filing No. 24-5 at 3.) She then asked him "what the hell is with the popsicle," to which he responded that he was trying to coax M.N. to put her clothes on. (Filing No. 24-5 at 3.) He then said, "it was a mistake, it was a mistake," and New responded, "you bet your sweet ass it was a mistake." (Filing No. 24-5 at 3.) She then asked Edwards, "how long has this been going on," to which he responded, "this was the first time." (Filing No. 24-5 at 3.)

At some point on either May 22 or May 23, 2014, Swain realized that due to an "equipment mistake," the probable cause hearing in front of Judge Harper had not been recorded. (Filing No. 24-4 at 2.) Because of the recording failure, on May 23, 2014, some point after conducting the interview of New, another probable cause hearing was held in front of a different Monroe County Circuit Court judge, Honorable Kenneth G. Todd ("Judge Todd"). (Filing No. 24-8.) At that hearing, Swain recounted that New entered the facility and heard M.N. crying. (Filing No. 24-8 at 3.) She entered the room where M.N. was, and found M.N. without her skirt or underwear, naked from the waist down. She observed Edwards seated in a chair in front of M.N. (Filing No. 24-8 at 4.) The following exchange then ensued:

> **Swain**: … Christopher James Edwards was seated in a chair in front of her daughter. His pants were down and New reports she saw that Edwards [sic] penis was exposed and erect. She also stated that it appeared that there was semen present. She took her daughter—
>
> **Judge**: I don't mean to be (inaudible) is it semen present meaning?
>
> **Swain**: As it was reported to me at that time semen dripping from his penis. She gathered her daughter. Made—took her from the room and dressed her and took her outside—

(Filing No. 24-8 at 4.)

Judge Todd inquired if this was the same information essentially provided to Judge Harper, to which Swain responded "Yes it is your honor." *Id.* at 6. Judge Todd found probable cause for the search warrant and reissued the search from May 23, 11:40 am. *Id.* at 7. Swain then requested

6

probable cause to arrest Edwards for charges of criminal confinement and vicarious sexual gratification as class C felonies. In support of probable cause, the following conversation took place:

> **Judge**: And the child was doing what when the mother observed?
>
> **Swain**: She was crying and holding her legs close together.
>
> **Judge**: Standing – seated?
>
> **Swain**: I believe she was standing. That's that is according to information on an interview I had with Ms. New this morning.
>
> **Judge**: And he was seated. So the 4 year old is standing before him I presume?
>
> **Swain**: Yes. Yes his back is from what she described to me today he was seated with his back to the entry was [sic] and the child, he was between the child and the doorway or the exit, standing and crying.
>
> **Judge**: Well he is apparently masturbating in front of the child.
>
> **Swain**: When she came around to see what doing [sic] she didn't see him in the act of Masturbation but did see his penis was erect and what she believed to be the presence of semen.

(Filing No. 24-8 at 9.) Based on this testimony, Judge Todd concluded that there was probable cause to arrest Edwards for the charge of Vicarious Sexual Gratification in violation of Indiana Code Section 35-42-4-5(c). (Filing No. 24-8 at 9.) All charges against Edwards were eventually dismissed, but not until a year and a half after his arrest. (Filing No. 34-1 at 83.)

On May 19, 2016, Edwards filed a Complaint in this Court, alleging that Swain in his individual capacity violated his rights under the Fourth Amendment to the U.S. Constitution by conducting an illegal search and a false arrest. (Filing No. 1.) In particular, Edwards alleges Swain withheld evidence and submitted false testimony at the second probable cause hearing, violating his Fourth Amendment rights. (Filing No. 1 at 3.)

Swain has moved for summary judgment, (Filing No. 24), and that Motion is currently ripe for the Court's review.[1]

### III. DISCUSSION

In order to establish a violation of 42 U.S.C. § 1983, a plaintiff must establish two elements: that the conduct complained of (1) was committed by a person acting under color of state law; and (2) deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States. *See Larsen v. City of Beloit,* 130 F.3d 1278, 1282 (7th Cir. 1997). Both parties agree that Swain acted under color of state law, but dispute whether his actions deprived Edwards of rights guaranteed by the Constitution.

"To prevail on a false-arrest claim under § 1983, a plaintiff must show that there was no probable cause for his arrest." *Neita v. City of Chicago*, 830 F.3d 494, 497 (7th Cir. 2016); *see also Juriss v. McGowan,* 957 F.2d 345, 349 n. 1 (7th Cir. 1992) ("It is well settled that the actual existence of probable cause to arrest precludes a § 1983 suit for false arrest."). However, a Section 1983 suit is not precluded "where officers responsible for bringing about an unlawful arrest knew that the arrest warrant had issued without probable cause; this is particularly true of officers who knew that those who obtained the warrant had deceived the authorizing body." *Juriss*, 957 F.2d at 350-51 (citing *Malley v. Briggs,* 475 U.S. 335, 345 (1986)). "Under these circumstances, even a facially valid arrest warrant does not shield otherwise unreasonable conduct." *Id.* The parties do not dispute that the same standard applies regarding the issuance of search warrants.

Swain argues that the Court should grant summary judgment in his favor because (1) the testimony provided at the second probable cause hearing is irrelevant to the probable cause determination, since a probable cause determination had been made at the first hearing; (2) even

---

[1] Swain objects to certain statements within Edwards' statement of facts. Because the Court concludes that summary judgment should be granted, it need not address these objections.

if any subsequent evidence or testimony was relevant, Swain did not withhold evidence or submit false testimony; (3) Swain did not arrest Edwards; and (4) Swain is entitled to qualified immunity. (Filing No. 25 at 8-15.)

### A. **Impact of Second Hearing**

Edwards does not challenge the validity of his initial arrest on May 22, 2014, or the probable cause determination made by Judge Harper on that date. (Filing No. 33 at 7.) Edwards contends, however, that at the second probable cause hearing on May 23, 2014, Swain was required to present the evidence as it existed at that point—including New's changed account of the events leading to his arrest. (Filing No. 33 at 7-11.) Swain argues that the second hearing is irrelevant, because a probable cause determination had already been made at the first hearing. (Filing No. 25 at 9.) Swain contends that the circumstances present here actually involve a question of continued confinement, which is governed by the Due Process Clause—not a question of false arrest, which would constitute an unlawful seizure under the Fourth Amendment. (Filing No. 25 at 9.)

Neither party has pointed the Court to any case law addressing circumstances in which the government conducts a "re-do" of a probable cause hearing due to failure-to-record or other similar defect. Indiana law provides some background as to the procedural requirements regarding the conduct and recording of the hearings at issue here. Indiana Code Section 35-33-5-8 provides that "[a] judge may issue a search or arrest warrant without the affidavit required under section 2 of this chapter, if the judge receives testimony subject to the penalties for perjury of the same facts required for an affidavit … (2) orally by telephone or radio…" I.C. § 35-33-5-8(a)(2). Subsection (e) provides that:

> [i]f a warrant is issued under subsection (a)(2), the judge shall record the conversation on audio tape and order the court reporter to type or transcribe the recording for entry in the record. The judge shall certify the audio tape, the transcription, and the warrant retained by the judge for entry in the record.

9

I.C. § 35-33-5-8(e).  The Indiana Court of Appeals has held as invalid search warrants issued without satisfying the recording requirement of I.C. § 35-33-5-8(e), and upheld the suppression of evidence collected as a result.  *See State v. Davis*, 770 N.E.2d 338, 341-42 (Ind. Ct. App. 2002).

Similarly, I.C. § 35-33-7-2 provides that, when a person has been arrested without a warrant, "the facts upon which the arrest was made shall be submitted to the judicial officer, ex parte, in a probable cause affidavit."  I.C. § 35-33-7-2(a).  Or –

> [i]n lieu of the affidavit or in addition to it, the facts may be submitted orally under oath to the judicial officer.  If facts upon which the arrest was made are submitted orally, the proceeding shall be recorded by a court reporter, and, upon request of any party in the case or upon order of the court, the record of the proceeding shall be transcribed.

I.C. § 35-33-7-2(a).

Swain has pointed to no case law or other authority suggesting that the re-do of the probable cause hearing constitutes a question of "continued deprivation" as opposed to a question of probable cause in the first instance.  In addition, although Swain does not address the Indiana statutory scheme in his briefing, it appears to the Court that under Indiana law, if Swain had not requested and participated in the "re-do," the search and arrest would have been held invalid (unless an exception applied, such as exigent circumstances to conduct the search).  The Court cannot agree with Swain's assertion that despite the failure to record (in apparent violation of Indiana law) and the new probable cause hearing, the first probable cause hearing controls.  The Court concludes that Edwards did not receive an *additional* or *duplicative* hearing—rather, he received a *new* hearing to remedy the defect discovered when the equipment failed to record.

Therefore, the second probable cause hearing is the relevant one, to the extent that the hearing bears on the question of whether probable cause existed to arrest Edwards.

**B.**      **Fourth Amendment Violation**

Swain argues that, even if the Court considers the May 23, 2014 hearing as the relevant one, no Fourth Amendment violation occurred, because he did not provide false testimony. (Filing No. 25 at 8-11.)

"A warrant request violates the Fourth Amendment if the requesting officer knowingly, intentionally, or with reckless disregard for the truth, makes false statements in requesting the warrant and the false statements were necessary to the determination that a warrant should issue." *Hart v. Mannina*, 798 F.3d 578, 591 (7th Cir. 2015). The Seventh Circuit has held that "false statements" may also include material factual omissions. *U.S. v. Robinson*, 546 F.3d 884, 888 (7th Cir. 2008). Whether an omitted fact was material "depends on its relative importance to the evaluation of probable cause; an omitted fact is material if its inclusion would have negated probable cause. If the omitted fact would not have negated probable cause, its omission was immaterial and there was no Fourth Amendment violation." *Hart*, 798 F.3d at 592-93 (citations omitted). To assess materiality, the Court must "examine whether a particular hypothetical affidavit that included the omitted material would still establish probable cause." *Id.* (citation omitted).

New's second account of the events of May 22, 2014 differs from her first. In her first account, she stated that she saw Edwards with no pants or underwear on. (Filing No. 34-2 at 2.) New stated that Edwards had a fully erect penis that appeared to have semen dripping from it. (Filing No. 34-2 at 2.) She stated that she yelled several times "what is going on," while Edwards attempted to cover his erect penis. (Filing No. 34-2 at 2.) She stated that Edwards followed her out of the building, and she asked him whether he had touched M.N. (Filing No. 34-2 at 2.) Edwards responded only by saying "uh," and apologizing. (Filing No. 34-2 at 2.) In her second statement, New reported that she found Edwards with his pants and underwear on, but his pants

11

undone. (Filing No. 24-5 at 3.) New could "see an erection on the side," and she saw several wet spots that she thought could be pre-ejaculate or drips from a popsicle. (Filing No. 24-5 at 3.) Edwards stated to New that "it was a mistake, it was a mistake;" and when New asked Edwards, "how long has this been going on," he responded, "this was the first time." (Filing No. 24-5 at 3.)

Swain argues that the discrepancies between these two accounts are immaterial, both because the differences are minor, and because, in any event, New's second account establishes probable cause for Edwards' arrest and search. The Court does not agree that the discrepancies are minor—New's first account was more clearly inculpatory than the second. But the standard for determining whether a fact is material does not turn on the omitted fact's degree of inculpation—instead, this Court is tasked with determining whether "a particular hypothetical affidavit that included the omitted material would still establish probable cause." *Robinson*, 546 F.3d at 592-93 (citation omitted).

In the May 23, 2014 hearing, Judge Todd concluded that there was probable cause to believe that Edwards had committed the offense of Vicarious Sexual Gratification, in violation of Indiana Code Section 35-42-4-5(c). (Filing No. 24-8 at 9.) That statute provides that:

> (c) A person eighteen (18) years of age or older who knowingly or intentionally:
>
> (1) engages in sexual intercourse;
> (2) engages in other sexual conduct (as defined in IC 35-31.5-2-221.5); or
> (3) touches or fondles the person's own body;
>
> in the presence of a child less than fourteen (14) years of age with the intent to arouse or satisfy the sexual desires of the child or the older person commits performing sexual conduct in the presence of a minor, a Level 6 felony.

I.C. § 35-42-4-5(c). New's second account—the "omitted material"—would have presented the following facts to the issuing judge: that New heard M.N. crying when she walked into the daycare; that she found M.N. and Edwards alone in a room; that M.N. was wearing no skirt or

12

underwear and was standing near Edwards; that Edwards' pants were undone and he appeared to have an erection; New saw several wet spots that she thought might be pre-ejaculate; Edwards stated to New that "it was a mistake, it was a mistake;" and when New asked Edwards, "how long has this been going on," he responded, "this was the first time." (Filing No. 24-5 at 3.)

The Court concludes that these facts, had they been recounted to Judge Todd at the May 23, 2014 hearing, would have been sufficient to establish probable cause for an arrest and the search warrant. Edwards argues that his genitals were not exposed; that it is questionable whether New could have distinguished an erection visible under the pants; and that having an erection in front of a partially nude child is not a crime. While Edwards is correct that alternative explanations for the circumstances reported by New were possible, a finding of probable cause is not a determination that a crime has occurred, and it does not require a negation of all non-criminal explanations. "Determinations of probable cause are naturally based on probabilities, and a finding of probable cause does not require evidence sufficient to support a conviction, nor even evidence demonstrating that it is more likely than not that the suspect committed a crime." *United States v. Funches*, 327 F.3d 582, 586 (7th Cir. 2003); *see also Gerstein v. Pugh,* 420 U.S. 103, 121 (1975) (stating that the probable-cause determination "does not require the fine resolution of conflicting evidence that a reasonable-doubt or even a preponderance standard demands."). In addition, "an arrest is reasonable under the Fourth Amendment so long as there is probable cause to believe that some criminal offense has been or is being committed, even if it is not the crime with which the officers initially charge the suspect." *McComas v. Brickley*, 673 F.3d 722, 727 (7th Cir. 2012).

Edwards also argues that had Swain provided the Judge Todd with New's first and second accounts, her changing stories would have given the judge reason to doubt both versions' veracity.

(Filing No. 33 at 9.) The Fourth Amendment standard, however, for witness testimony is permissive: "as long as a reasonably credible witness or victim informs the police that someone has committed, or is committing, a crime, the officers have probable cause to place to alleged culprit under arrest, and their actions will be cloaked with qualified immunity if the arrestee is later found innocent." *Spiegel v. Cortese*, 196 F.3d 717, 723 (7th Cir. 1999). Moreover, incongruities in the story of an eyewitness are not uncommon, particularly when the eyewitness is upset or has encountered a traumatic event. *See Johnson v. Acevedo*, 572 F.3d 398, 406 (7th Cir. 2009).

The standard for establishing false arrest is high, and in these circumstances, Edwards must establish that the omitted statement would have "negated" probable cause. The two accounts by New were not so inconsistent as to constitute a negation of probable cause, and the second statement (as described above) still described conduct sufficient to constitute a violation of the statute. Edwards argues that New's second statement "describ[es] an event that was not incriminating," however, the Court disagrees. Swain's decision to omit New's subsequent statement is troubling, and Swain should have mentioned the inconsistencies in what New reported to Sargent Davis and what she reported to him directly the next morning. However, a reasonable trier of fact would not find these omissions and inconsistencies material in determining probable cause. Because the Court concludes that probable cause existed for both the search warrant and Edwards' arrest under either version of facts, there was no Fourth Amendment violation and Swain is entitled to summary judgment.[2]

### IV. CONCLUSION

For the reasons stated above, Defendant Bradley Swain's Motion for Summary Judgment (Filing No. 24) is **GRANTED** in his favor and against Plaintiff Christopher Edwards.

---

[2] As such, the Court need not address Swain's alternative arguments, including his qualified immunity defense.

14

Final judgment will issue under separate order.

**SO ORDERED**

Date: 7/27/2017

*[signature]*

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Jeffrey S. McQuary
BROWN TOMPKINS LORY
jmcquary@btlmlaw.com

Aimee Rivera Cole
TRAVELERS STAFF COUNSEL OFFICE
arcole@travelers.com